ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| GRISSELLE IRENE VILLABA GALAN<br><br>APELANTE<br><br>V.<br><br>CONCILIO DE SALUD INTEGRAL DE LOIZA, INC. Y OTROS<br><br>APELADOS | TA2025AP00377 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Loíza<br><br>Caso Número: LO2025CV00100<br><br>Sobre: Despido injustificado |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Ronda Del Toro y la Juez Lotti Rodríguez.

Lotti Rodríguez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico a 17 de noviembre de 2025.

Comparece la Dra. Grisselle Irene Villalba Galán (en adelante, Dra. Villalba o apelante) y nos solicita que revisemos la *Resolución Interlocutoria* emitida por el Tribunal de Primera Instancia, Sala Superior de Loíza (en adelante, TPI o foro primario), en la que declaró No Ha Lugar la reconsideración presentada por la apelante solicitando se dejara sin efecto la *Sentencia Final* que desestimaba con perjuicio la *Demanda* presentada.

**I.**

Los hechos que anteceden a la presentación de este recurso son los siguientes. La apelante comenzó a trabajar para el Concilio de Salud Integral de Loíza, Inc. (en adelante, Concilio o apelado) en junio de 2022.[1] En noviembre de 2023 fue despedida de su puesto como pediatra tras una investigación que realizó la parte apelada en la que concluyó que la Dra. Villalba había incurrido en crasas y serias negligencias en el desempeño de sus funciones y por

---
[1] Véase *Contrato Regular* en los Anejos del recurso de *Apelación*.

múltiples quejas recibidas de padres de menores a los que esta atendía.[2]

A raíz del despido, la apelante, representada por la Unión Laboral de Enfermeras(os) y Empleados de la Salud (en adelante, ULEES), presentó ante el Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos de Puerto Rico (en adelante, Negociado) una querella asignada a los casos número A-24-448 y A-24-531.[3] Esta querella fue presentada en virtud del Convenio Colectivo existente entre el patrono apelado y la ULEES, donde se exige que, en reclamaciones por despido, el caso se debería someter a un proceso de arbitraje ante el Negociado.[4]

El 28 de octubre de 2024, aun sin haber culminado el arbitraje ante el Negociado, la apelante presentó una *Demanda* contra el Concilio en el caso LO2024CV00196.[5] Allí, alegó que su despido fue injustificado y solicitó los remedios provistos por la Ley Núm. 80 del 30 de mayo de 1976, según enmendada, conocida como Ley Sobre Despidos Injustificados, 29 LPRA sec. 185a *et seq.* (Ley 80). Además, adujo que el despido le había provocado graves daños psicológicos y angustias mentales por lo que solicitó que se le indemnizara con una cantidad no menor de $1,500,000 de conformidad con el Artículo 1536 del Código Civil de Puerto Rico, 31 LPRA sec. 10801.

Luego de varios trámites procesales, el apelado presentó una *Solicitud de Desestimación por Falta de Jurisdicción sobre la Materia*[6] en la que planteó que el tribunal carecía de jurisdicción ya que, en virtud del Convenio Colectivo, el Negociado era quien tenía jurisdicción exclusiva para atender las controversias laborales entre

---

[2] Véase carta de *Terminación de Empleo* y Sueldo en los Anejos del recurso de *Apelación.*

[3] Véase Entrada 3, Anejo 1, del Sistema Unificado de Manejo y Administración de Casos (SUMAC) del TA.

[4] Entrada 11, Anejo 4, del SUMAC del TPI, caso LO2025CV00100.

[5] Entrada 1 del SUMAC del TPI, caso LO2024CV00196.

[6] Entrada 25 del SUMAC del TPI, caso LO2024CV00196.

la ULEES y el Concilio. En respuesta, la Dra. Villalba presentó su oposición a la desestimación indicando que el 27 de marzo de 2025 había notificado, a través de la ULEES, su interés de desistir del proceso de arbitraje y que el tribunal tenía jurisdicción para atender su reclamación al cerrarse el caso ante el Negociado.[7]

El foro primario emitió una orden en la que le solicitó a la apelante que presentara prueba fehaciente de lo expresado en la oposición[8], lo cual la apelante cumplió presentando la *Resolución* emitida por el Negociado el 23 de abril de 2025.[9] En dicha *Resolución* el Negociado dispuso de la querella ya que la ULEES "solicitó el cierre y archivo con perjuicio de ambos casos, en vista de que la Unión perdió todo interés en la continuación del trámite de la querella en el foro de arbitraje."[10]

Así las cosas, el TPI emitió *Sentencia* el 23 de abril de 2025, notificada el 29 del mismo mes, en la que acogió la solicitud de desestimación presentada por el Concilio y desestimó la demanda.[11]

No obstante, el 28 de mayo de 2025, la Dra. Villalba presentó una nueva *Demanda* contra el Concilio, asignada al caso LO2025CV00100, en la que nuevamente planteó que su despido fue injustificado y, por ende, contrario a la Ley 80, *supra,* y reclamó la misma cuantía en daños y perjuicios.[12] Por su parte, el Concilio presentó una *Moción de Desestimación* bajo el fundamento de cosa juzgada en su modalidad de impedimento colateral por sentencia.[13]

El 11 de julio de 2025, sin que la apelante presentara su réplica a la *Moción de Desestimación* dentro del término provisto por el tribunal, el TPI emitió su *Sentencia Final* en la que desestimó la

---

[7] Entrada 31 del SUMAC del TPI, caso LO2024CV00196.
[8] Entrada 32 del SUMAC del TPI, caso LO2024CV00196.
[9] Entrada 35 del SUMAC del TPI, caso LO2024CV00196.
[10] *Id.*
[11] Entrada 42 del SUMAC del TPI, caso LO2024CV00196.
[12] Entrada 1 del SUMAC del TPI, caso LO2025CV00100.
[13] Entrada 3 del SUMAC del TPI, caso LO2025CV00100.

demanda y ordenó el archivo del caso con perjuicio.[14] Inconforme, la Dra. Villalba solicitó la reconsideración del dictamen emitido[15], pero el TPI la declaró No Ha Lugar mediante *Resolución Interlocutoria* dictada el 25 de agosto de 2025 y notificada al día siguiente.

Aún inconforme, el 25 de septiembre de 2025, la apelante presentó el recurso de *Apelación* ante nuestra consideración, señalando como único error lo siguiente:

> **ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR UNA DEMANDA POR DESPIDO INJUSTIFICADO BAJO LA DOCTRINA DE COSA JUZGADA CUANDO EN UN PLEITO ANTERIOR ENTRE LAS PARTES SE DESESTIMÓ POR FALTA DE JURISDICCIÓN.**

En su escrito, la parte apelante argumenta que, si bien cuando se presentó el caso LO2024CV00196 el TPI, en efecto, no tenía jurisdicción porque estaba pendiente el arbitraje ante el Negociado, al haberse archivado los casos pendientes en ambos foros ahora el tribunal es el foro con jurisdicción para atender la controversia que nunca ha sido litigada en los tribunales. Por otro lado, señala que la reclamación de daños y perjuicios no está sujeta a la cláusula de arbitraje del Convenio Colectivo y que el tribunal es el foro con jurisdicción para atenderla.

Por su parte, el Concilio presentó su *Alegato de Apelación[16]* en el que reiteran que el Negociado era quien tenía jurisdicción exclusiva para atender la controversia sobre el despido y que al haberse archivado con perjuicio la querella en dicho foro opera la doctrina de cosa juzgada.

Con la comparecencia de ambas partes, procedemos a resolver.

## II.

### A. Jurisdicción

---

[14] Entrada 6 del SUMAC del TPI, caso LO2025CV00100.
[15] Entrada 9 del SUMAC del TPI, caso LO2025CV00100.
[16] Entrada 3 del SUMAC del TA.

La jurisdicción es el poder o autoridad de un tribunal para considerar y decidir casos y controversias. *Rodríguez Vázquez v. Hosp. Auxilio Mutuo*, 2025 TSPR 55, 216 DPR ___ (2025); *R&B Power, Inc. v. Junta de Subastas ASG*, 213 DPR 685, 698 (2024); *Cobra Acquisitions v. Mun. de Yabucoa et al.*, 210 DPR 384, 394 (2022). De ordinario, los tribunales en Puerto Rico poseen jurisdicción general para atender cualquier causa de acción que presente una controversia propia para adjudicación, salvo que no tengan jurisdicción sobre la materia. *Beltrán Cintrón et al. v. ELA et al.*, 204 DPR 89, 101 (2020); *Rodríguez Rivera v. De León Otaño*, 191 DPR 700, 708 (2014).

La jurisdicción sobre la materia es la capacidad para atender y resolver una controversia, la cual solo puede ser limitada por disposición legislativa. *Beltrán Cintrón et al. v. ELA et al.*, *supra*; *Rodríguez Rivera v. De León Otaño*, *supra*, págs. 708-709. La ausencia de jurisdicción sobre la materia:

> "(1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede éste arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal *motu proprio*." *Rodríguez Vázquez v. Hosp. Auxilio Mutuo, supra*; *MCS Advantage, Inc. v. Fossas Blanco et al.*, 211 DPR 135, 145 (2023); *Beltrán Cintrón et al. v. ELA et al.*, *supra*; *Fuentes Bonilla v. ELA et al.*, 200 DPR 364, 372-373 (2018).

Por otro lado, es principio reiterado que los tribunales estamos llamados a ser fieles guardianes de nuestra jurisdicción, incluso cuando ninguna de las partes invoque tal defecto. *Rodríguez Vázquez v. Hosp. Auxilio Mutuo, supra*; *R&B Power, Inc. v. Junta de Subastas ASG, supra*, pág. 698; *Ruiz Camilo v. Trafon Group, Inc.*, 200 DPR 254, 268 (2018). A esos efectos, nuestro Máximo Foro ha sido enfático en que la ausencia de jurisdicción es un defecto

insubsanable. *Shell Chemical Yabucoa, Inc. v. Santos Rosado*, 187 DPR 109, 112 (2012).

Así pues, en todo caso, los foros primarios y apelativos deben analizar si poseen jurisdicción para atender las controversias presentadas. *Mun. San Sebastián v. QMC Telecom*, 190 DPR 652, 660 (2014). En consecuencia, si un tribunal carece de jurisdicción lo procedente es la desestimación del caso sin entrar en los méritos de la controversia. *R&B Power, Inc. v. Junta de Subastas ASG, supra*; *Mun. San Sebastián v. QMC Telecom, supra*.

### B. Cláusula de Arbitraje

En nuestro ordenamiento jurídico existe una fuerte política pública a favor del arbitraje obrero-patronal. *UGT v. Centro Médico del Turabo*, 208 DPR 944, 955 (2022); *Aut. Puertos v. HEO*, 186 DPR 417, 440 (2012); *CFSE v. Unión de Médicos,* 170 DPR 443, 448 (2007). Esto se debe a que se entiende que el arbitraje es un mecanismo alternativo menos técnico, más flexible y menos oneroso que los foros judiciales, y, por tanto, más apropiado para la resolución de las controversias que emanan de la relación laboral. *UGT v. Centro Médico del Turabo, supra*; *Aut. Puertos v. HEO, supra*, págs. 440-441; *CFSE v. Unión de Médicos, supra*, pág. 449.

En el arbitraje "las partes en disputa someten y presentan su caso ante un tercero neutral que está investido con la facultad de rendir una decisión". *Indulac v. Unión*, 207 DPR 279, 294 (2021), citando a D. Fernández Quiñones, *El arbitraje obrero-patronal*, Colombia, Ed. Forum, 2000, pág. 9. Así, este procedimiento tiene un efecto excluyente al proceso judicial ya que constituye un contrato que priva a los jueces y tribunales de la facultad de conocer, en primera instancia, los conflictos o controversias sometidas a arbitraje. *Id.*

Este mecanismo procede únicamente cuando las partes así lo han pactado y conforme a los términos en que dicho acuerdo haya

sido establecido. *Aponte Valentín et al. v. Pfizer Pharm*, 208 DPR 263, 282 (2021). Así pues, en el contexto laboral, el arbitraje surge como parte del proceso de negociación colectiva. *Id*. Por ello, **cuando en un convenio colectivo se pacta someter a arbitraje las controversias que puedan surgir entre el patrono y sus empleados, esto sirve como un foro alterno a los tribunales que tiene el efecto de sustituir a los jueces por los árbitros**, cuya interpretación merece gran deferencia. *UGT v. Centro Médico del Turabo, supra*; *Indulac v. Unión, supra*; *Aut. Puertos v. HEO, supra*, pág. 441. (Énfasis nuestro).

En vista de lo anterior, la revisión de los laudos de arbitraje se limita a determinar si hubo fraude, conducta impropia, falta del debido proceso de ley, violación a la política pública, falta de jurisdicción o que el laudo no resuelva todos los asuntos en controversia. *UGT v. Centro Médico del Turabo, supra*, págs. 955-956; *CFSE v. Unión de Médicos, supra*. No obstante, si las partes acuerdan que el laudo de arbitraje sea emitido conforme a derecho, los tribunales de justicia podrán corregir errores jurídicos de forma compatible con el derecho aplicable. *Id*.

Por otro lado, si surge una controversia respecto a si una cláusula de arbitraje crea el deber entre las partes de acudir a ese mecanismo, les corresponde a los tribunales atender dicho asunto. *Aponte Valentín et al. v. Pfizer Pharm, supra*, pág. 283. A esos efectos, el Tribunal Supremo ha resuelto que la controversia puede ser sobre una de tres modalidades, a saber: (i) si existe un convenio de arbitraje; (ii) si tal convenio alcanza determinada controversia, y (iii) si tal convenio alcanza una disputa sobre la duración o expiración del contrato. *Id*.

### i. Convenio Colectivo de la ULEES

En particular, la ULEES negoció un Convenio Colectivo con el Concilio de Salud Integral de Loíza, Inc., vigente desde mayo de

2022. El Artículo VIII de dicho Convenio Colectivo establece los pasos a seguir en caso de surgir cualquier controversia o conflicto entre la ULEES y el Concilio respecto a acciones disciplinarias sobre los empleados. A esos efectos, dispone dicho Artículo que como primer paso se debe presentar la queja ante el Director de Recursos Humanos del Concilio y que, una vez este resuelva, de no estar de acuerdo con la decisión:

> "[L]a Unión podrá, no más tarde de diez (10) días laborables después de conocer la decisión del mismo, solicitar por escrito que se recurra a arbitraje. [...] En tal caso las partes seleccionaran un árbitro de una terna de árbitros sometida por el Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos de Puerto Rico. [...]
>
> 1. En caso de despido o suspensión disciplinaria de un empleado, si el árbitro determinara que el despido o la suspensión disciplinaria fue sin justa causa según dicho termino se define conforme a derecho, el árbitro ordenara la reposición del empleado con paga atrasada a la fecha del despido o la suspensión y actuará de acuerdo a las disposiciones del Convenio Colectivo.
> [...]
> 3. Cuando las partes refieran un asunto arbitrable al procedimiento de arbitraje, se conviene en someter una sumisión escrita, especificando la controversia a resolverse. El árbitro no tendrá jurisdicción para alterar, enmendar las disposiciones de este convenio colectivo. Un laudo emitido en violación de este inciso, será nulo y sin efecto.
> [...]
> 6. El laudo que emita el árbitro será conforme a derecho.
> 7. La decisión del árbitro será final y obligatoria excepto cuestiones de derecho que puedan surgir y cuyas cuestiones de derecho puedan ser apeladas a una corte de jurisdicción competente por cualquiera de las partes.
> 8. Toda reclamación de salario que surja bajo este Convenio Colectivo o las leyes aplicables y los tipos de salarios, no estarán sujetos al procedimiento de arbitraje ya que las partes expresamente convienen que el arbitraje será sustituido por las cortes de ley con jurisdicción competente. [...]"

Esta sección del Convenio Colectivo dispone expresamente que las controversias o conflictos relacionados con medidas disciplinarias se atenderán mediante el procedimiento de arbitraje, el cual constituye el foro primario acordado por las partes. De la misma forma, en reclamaciones de salario, el Convenio establece

que estas sí serán atendidas por los tribunales. En consecuencia, según lo acordado, el proceso de arbitraje queda excluido solamente en cuanto a reclamaciones de salario, correspondiéndole a los tribunales la jurisdicción primaria para atender controversias de ese tipo y no sobre acciones disciplinarias.

### C. Desistimiento con perjuicio de una causa de acción

El desistimiento se refiere a la declaración de voluntad que realiza la parte promovente de una causa de acción mediante la cual anuncia su deseo de abandonar el pleito que interpuso y que aún se encuentra pendiente. *Pagán Rodríguez v. Pres. Cáms. Legs.*, 206 DPR 277, 285 (2021); J. A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da ed., San Juan, Pubs. JTS, 2011, T. III, pág. 1138.

En nuestro ordenamiento jurídico, la Regla 39.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 39.1, regula las distintas modalidades en que puede efectuarse el desistimiento de reclamaciones judiciales en acciones civiles. En particular, el inciso (a) de la regla dispone los casos en los que la parte demandante puede desistir de manera voluntaria, ya sea (1) mediante un aviso de desistimiento o (2) a través de una estipulación de desistimiento firmada por todas las partes comparecientes. *Id.*

Asimismo, la citada regla establece cuando el desistimiento será con perjuicio. Según la Regla 39.1, esto ocurre cuando el aviso de desistimiento es presentado por un demandante que ya ha desistido anteriormente de otro pleito basado en la misma reclamación o que incluye los mismos fundamentos ante el Tribunal General de Justicia, o algún tribunal federal o de cualquier estado de los Estados Unidos. 32 LPRA Ap. V, R. 39.1. No obstante, la Regla también dispone que **"[a] menos que el aviso de desistimiento o la estipulación exponga lo contrario, el desistimiento será sin perjuicio."** *Id.* (Énfasis nuestro). Es decir, si del mismo aviso de desistimiento surge que la parte interesa que sea con perjuicio, no

podrá volver a presentar el caso. Ello, debido a que **un desistimiento con perjuicio tiene el efecto de una adjudicación en los méritos.** *Id.*; *Pagán Rodríguez v. Pres. Cáms. Legs., supra,* pág. 286; *PRAMCO CV6, LLC v. Delgado Cruz,* 184 DPR 453, 459 (2012). (Énfasis nuestro).

### D. Doctrina de cosa juzgada en su modalidad de impedimento colateral por sentencia

La doctrina de cosa juzgada se refiere a "lo ya resuelto por fallo firme de un Juez o Tribunal competente, y lleva en sí la firmeza de su irrevocabilidad." *Landrau Cabezudo et al. v. Puertos et al.*, 2025 TSPR 7, 215 DPR ___, (2025), citando a *Parrilla v. Rodríguez,* 163 DPR 263, 268 (2004), que a su vez cita a J.M. Manresa, *Comentarios al Código Civil Español,* 6ta ed. Rev., Madrid Ed. Reus, 1967, T.VIII, Vol. 2, pág. 278. Tiene como propósito darles certidumbre y certeza a las partes en el litigio al impartirle finalidad a los dictámenes judiciales. *Landrau Cabezudo et al. v. Puertos et al.*, *supra*; *PR Wire Prod. v. C. Crespo & Asoc.*, 175 DPR 139, 151 (2008).

El Artículo 1204 del Código Civil de Puerto Rico de 1930, hoy derogado, 31 LPRA ant. sec. 3343, disponía que para que opere la doctrina de cosa juzgada "[e]s necesario que entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron." Aunque el Código Civil de Puerto Rico de 2020, 31 LPRA sec. 5311 *et seq.*, no recoge expresamente la doctrina de cosa juzgada, esta sigue operando en nuestro ordenamiento jurídico.

El efecto de que se configure la doctrina es que la sentencia decretada en un pleito anterior impide que, en un pleito posterior, entre las mismas partes, se litiguen las mismas causas de acción y cosas, las cuestiones ya litigadas y adjudicadas. *Landrau Cabezudo et al. v. Puertos et al.*, *supra.* Por ello, el Tribunal Supremo ha

resuelto que esta "no debe aplicarse inflexiblemente, especialmente cuando al hacerlo se desvirtúan los fines de la justicia, produce resultados absurdos o cuando se plantean consideraciones de interés público." *Id.*, citando a *Meléndez v. García*, 158 DPR 77, 92 (2002).

A su vez, en nuestro ordenamiento jurídico se ha reconocido el impedimento colateral por sentencia como una modalidad de la doctrina de cosa juzgada. *Presidential v. Transcaribe*, 186 DPR 263, 276 (2012). Su propósito es promover la economía procesal y judicial. *Id.* Distinto a la doctrina de cosa juzgada, en el impedimento colateral por sentencia no es necesario que se configure la identidad de causas. *Id.*, págs. 276-277. Así, el impedimento colateral por sentencia se configura cuando: (1) se adjudicó un asunto, (2) en una sentencia previa, (3) luego de haberse litigado, (4) entre las mismas partes **y (5) el hecho adjudicado es esencial para un segundo pleito.** *Landrau Cabezudo et al. v. Puertos et al.*, *supra*, citando a *Rodríguez Ocasio v. ACAA*, 197 DPR 852, 862-863 (2017) (Sentencia). (Énfasis nuestro).

De igual forma, el efecto de la doctrina bajo esta modalidad es que impide que, en un pleito posterior, se litigue un hecho esencial que fue adjudicado mediante sentencia final en un litigio previo. *PR Wire Prod. v. C. Crespo & Asoc.*, *supra*, pág. 152. No obstante, no procede su aplicación cuando la parte contra la cual se interpone no ha tenido la oportunidad de litigar previamente el asunto y no ha resultado ser la parte perdidosa en el litigio anterior. *Presidential v. Transcaribe, supra*, pág. 277; *Beníquez et al. v. Vargas et al.*, 184 DPR 210, 226 (2012); *PR Wire Prod. v. C. Crespo & Asoc.*, *supra*, pág. 153.

Por otra parte, en *Pagán Hernández v. UPR*, 107 DPR 720, 733-735 (1978), el Tribunal Supremo reconoció la aplicación de la doctrina de cosa juzgada en el ámbito administrativo en tres

posibles vertientes: 1) dentro de la misma agencia; 2) interagencialmente, es decir, de una agencia a otra, y 3) entre las agencias y los tribunales. *Id.*, pág. 733. Asimismo, nuestro Máximo Foro ha resuelto que la aplicación de la doctrina no es automática y que cuando la naturaleza de lo planteado en el foro administrativo es distinta a lo que se plantea en el foro judicial, lo razonable es no aplicarla. *Acevedo v. Western Digital Caribe, Inc.*, 140 DPR 452, 465-466 (1996); *Pagán Hernández v. UPR*, *supra*, pág. 735.

### E. Causa de acción en daños y perjuicios en casos de reclamaciones por despido injustificado

En nuestro ordenamiento jurídico, el Artículo 1536 del Código Civil de Puerto Rico, 31 LPRA sec. 10801, "constituye la fuente legal mediante la cual una parte puede reclamar daños emocionales que surjan de toda causa de acción extracontractual." *SLG Pagán-Renta v. Walgreens*, 190 DPR 251, 264 (2014). Por el contrario, si la causa de acción surge de una relación contractual o de otro tipo, el citado artículo va a constituir "una fuente legal general para reclamar daños emocionales, siempre y cuando no se haya pactado algún tipo de limitación en ese sentido o que alguna ley especial -como lo es una ley laboral- no lo consienta o lo limite." *Id.*

A esos efectos, el Artículo 1 de la Ley 80, 29 LPRA sec. 185a, establece la indemnización a la que tiene derecho todo empleado que haya sido despedido injustificadamente. Esta compensación que recibe el empleado constituye por sí misma el resarcimiento por los daños y perjuicios sufridos a causa del despido. *Alvira v. SK & F Laboratories Co.*, 142 DPR 803, 809-810 (1997).

Así pues, como norma general, un empleado contratado por tiempo indeterminado, que es despedido sin justa causa, sólo tiene derecho a los remedios provistos por la Ley 80, *supra. Acevedo v. Western Digital Caribe, Inc.*, *supra*, pág. 459. De hecho, en el contexto específico de reclamaciones por despido injustificado

sometidas a arbitraje, el Tribunal Supremo resolvió que, si en un convenio colectivo se exige que el laudo sea conforme a derecho, sin expresarse hasta dónde se extienden las facultades del árbitro para conceder remedios, en caso de que el despido sí haya sido injustificado, la indemnización que procede es lo que dispone la Ley 80, *supra*; es decir, la mesada. *COPR v. SPU*, 181 DPR 299, 306, 333 (2011).

No obstante, existen tres excepciones que permiten conceder otros remedios adicionales a los que provee la Ley 80, a saber: (1) los remedios adicionales conferidos por conducta torticera del patrono, **ajena a la mera violación de una disposición de las leyes del trabajo**; (2) los remedios adicionales provistos por leyes especiales; y (3) los remedios adicionales concedidos por un despido cuyo propósito e intención principal sea subvertir una clara política pública del Estado o algún derecho constitucional. *COPR v. SPU*, *supra*, págs. 337-338. (Énfasis nuestro). De no existir alguna de las excepciones antes indicadas, el empleado sólo tendrá derecho al pago de la mesada. *Id.*, pág. 338.

Ahora bien, el remedio exclusivo de la Ley 80 no excluye automáticamente una causa de acción por responsabilidad civil de un patrono por conducta torticera **si esta reclamación emana de una fuente independiente al despido del empleado**. *Santiago Nieves v. Braulio Agosto Motors*, 197 DPR 369, 385 (2017); *Soc. de Gananciales v. Royal Bank de PR*, 145 DPR 178, 193 (1998); *Acevedo v. Western Digital Caribe, Inc.*, *supra*; *Rivera v. Security Nat. Life Ins. Co.*, 106 DPR 517, 527 (1977). (Énfasis nuestro). Por ello, si la ley laboral –en este caso la Ley 80– no prevé y sanciona la conducta incurrida o esta constituye un acto culposo o negligente autónomo, en ausencia de esa legislación especial, se puede acudir al Artículo 1536 del Código Civil, *supra*. *Santiago Nieves v. Braulio Agosto Motors*, *supra*, pág. 386.

En esas circunstancias, el empleado puede acudir a las normas generales de responsabilidad civil extracontractual frente a cualquier persona que haya incumplido un deber jurídico, salvo que una ley especial disponga lo contrario. *Id.* Sin embargo, **la persona que recurra a este remedio general para reclamar el resarcimiento de daños y perjuicios deberá probar todos los elementos de su causa de acción, incluida la conducta culposa o negligente atribuida al demandado.** *Id.* (Énfasis nuestro).

Por otro lado, **si la legislación laboral de que se trata, que en este caso corresponde a la Ley 80, sanciona la conducta imputada y otorga al empleado agraviado un remedio específico, no se puede asumir** que el legislador haya dejado abierta **la posibilidad de acudir a otro mecanismo o causa de acción** provista por una ley de carácter general. *Id.*, citando a *SLG Pagán-Renta v. Walgreens*, *supra*, pág. 260. (Énfasis nuestro).

### III.

Examinado el expediente ante nuestra consideración, concluimos que el foro primario actuó correctamente al desestimar con perjuicio la demanda presentada por la Dra. Villalba. Veamos.

Del expediente surge que la apelante presentó inicialmente una demanda, en el caso LO2024CV00196, mientras aún estaba pendiente un procedimiento de arbitraje ante el Negociado. Ante eso, fue correcta la decisión del TPI de desestimar esa primera demanda por falta de jurisdicción ya que, conforme al Convenio Colectivo entre el Concilio y la ULEES, el foro competente para atender reclamaciones por despido era el arbitraje ante el Negociado.

Por otro lado, en el foro arbitral, la Dra. Villalba —por conducto de la ULEES, pero a petición expresa de su parte[17]— solicitó el desistimiento del caso. A esos efectos, la *Resolución* del

---

[17] Véase anejo de la Entrada 31 del SUMAC del TPI, caso LO2024CV00196.

Negociado expresamente indica que la solicitud de la ULEES fue el "cierre y archivo con perjuicio de ambos casos, en vista de que la Unión perdió todo interés en la continuación del trámite de la querella en el foro de arbitraje."[18] Ese acto voluntario tiene el mismo efecto que una adjudicación final en los méritos y activa la doctrina de cosa juzgada, impidiendo que la misma controversia se vuelva a presentar ante otro foro. Al haber desistido con perjuicio, la apelante renunció a continuar su reclamación sobre el despido y agotó la vía disponible para impugnarlo. Por tanto, cuando luego presentó una nueva demanda basada en los mismos hechos y fundamentos, el TPI carecía de autoridad para atenderla. Permitirlo supondría relitigar un asunto ya resuelto en el foro pactado por las partes.

Finalmente, la reclamación por daños y angustias mentales tampoco puede sostenerse, pues esos daños, según alegados en la *Demanda,* se derivan del mismo despido y están cubiertos por el remedio exclusivo de la Ley 80, que contempla la mesada como compensación.

En consecuencia, el foro primario resolvió correctamente al concluir que operaba la doctrina de cosa juzgada y al desestimar con perjuicio la segunda demanda.

**IV.**

Por los fundamentos antes expuestos, se confirma la determinación del TPI.

Notifíquese.

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís

Secretaria del Tribunal de Apelaciones

---

[18] Véase Entrada 35 del SUMAC del TPI, caso LO2024CV00196.